IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

HAROLD ATENCIO,

              Plaintiff,

   v.                                  Case No. 1:23-cv-00331-JFR-JMR

SAM BREGMAN,
        in his official capacity as
        the District Attorney of the
        Second Judicial District,

              Defendant.

**PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

Harold Atencio ("Atencio" or "Plaintiff"), by and through undersigned counsel, files this Motion for Preliminary Injunction. Atencio respectfully requests that this Court enjoin enforcement of NMSA 1978, Section 32A-4-33(D) and prohibit Defendant from prosecuting Atencio, and all others similarly situated, for engaging in constitutionally protected speech.

Pursuant to D.N.M. LR-Civ. 7.1(a), Plaintiff requested Defendant's concurrence to the relief sought in this motion. Defendant does not take any position on this motion.

The grounds for this motion are as follows:

**I.      INTRODUCTION**

Recently, the Tenth Circuit in *Peck v. McCann*, 43 F.4th 1116 (10th Cir. 2022), decided that a Colorado statutory provision that criminalized the disclosure of non-identifying information in child abuse reports violated the right to free speech guaranteed by the First Amendment to the United States Constitution. As noted by *Peck*, forty-eight states have similar or identical provisions. *Id*. at 1137. New Mexico is one such state: NMSA 1978, Section 32A-4-33(D) criminalizes the disclosure of *any* information in child abuse and neglect cases.

Since the Tenth Circuit's ruling in *Peck*, multiple New Mexico government officials have all-but acknowledged the unconstitutionality of New Mexico's abuse and neglect confidentiality

statute. Yet it remains the law of the land – indeed, the New Mexico legislature recently declined to pass legislation that would have narrowed the statute's reach. Hence, on April 18, 2023, Atencio filed suit in this Court, seeking an order permanently enjoining enforcement of the New Mexico law as unconstitutional on its face. Under *Peck*, the statute is indefensible.

However, until that final relief is granted, Atencio will continue to suffer irreparable injury, in the form of loss of his First Amendment rights. Accordingly, the Court should issue an order preliminarily enjoining Defendant from prosecuting Atencio when he publicly discusses lawfully obtained knowledge of bad acts, violation of policy, and child endangerment by New Mexico's Children, Youth and Families Department ("CYFD").

## II.     FACTUAL AND STATUTORY BACKGROUND

### A.  The New Mexico statutory framework that criminalizes speech.

The New Mexico Abuse and Neglect Act, NMSA 1978, Section 32A-4-1 *et. seq*. of the Children's Code, governs reporting requirements of suspected child abuse or neglect, CYFD investigations, hearings on matters of child abuse and neglect, and confidentiality of records. Section 32A-4-33(A) (the "Confidentiality Provision") essentially makes all aspects of abuse and neglect proceedings confidential in nature. It states that:

> *All records or information* concerning a party to a neglect or abuse proceeding, including social records, diagnostic evaluations, psychiatric or psychological reports, videotapes, transcripts and audio recordings of a child's statement of abuse or medical reports incident to or obtained as a result of a neglect or abuse proceeding or that *were produced or obtained* during an investigation in anticipation of or incident to a neglect or abuse proceeding *shall be confidential and closed to the public*.

§ 32A-4-33(A) (emphasis added). The statute lists several individuals and entities entitled to access the confidential records, including foster parents and grandparents. § 32A-4-33(B).

The Confidentiality Provision is enforced through Section 32A-4-33(D) (the "Criminal Provision"), which provides a criminal penalty for any unlawful release of confidential information:

> Whoever intentionally and unlawfully releases *any information or records closed to the public* pursuant to the Abuse and Neglect Act *or releases or makes other*

> *unlawful use of records* in violation of that act is guilty of a petty misdemeanor and
> shall be sentenced pursuant to the provisions of Section 31-19-1 NMSA 1978.

*Id*. (emphasis added). In turn, a petty misdemeanor is punishable by either a jail term of up to six

months, a fine of up to $500, or both. NMSA § 31-19-1(B). Thus, the practical effect of the

Confidentiality Provision and the Criminal Provision is that the record keeping, reporting,

information gathering, and decision making of CYFD employees and agents is shielded from

public criticism as confidential information closed to the public.

### B.  The chilling effect on Atencio's speech.

Atencio is a licensed attorney in good standing with the New Mexico State Bar.[1] He resides

and works in Bernalillo County.[2] Since 1994, he has represented individuals in various stages of

adoption proceedings.[3] As part of his practice, he regularly encounters children subject to abuse

and neglect proceedings.[4] On that basis, he routinely possesses and obtains confidential records

and information from abuse and neglect proceedings.[5] He obtains these confidential records and

information lawfully, pursuant to the Confidentiality Statute.[6] As a matter of course since 1994,

during representation of his clients, Atencio and his clients have been warned by New Mexico state

district court judges that violation of the Confidentiality Statute is a criminal offense.[7]

Atencio recently represented a relative of an infant subject to an abuse and neglect

proceeding in New Mexico.[8] During his representation, Atencio learned of egregious ongoing

misconduct by CYFD related to the infant's abuse and neglect proceeding, including violations of

CYFD policies and procedures, possible corruption, and planned conduct that threatened the life and

wellbeing of the infant.[9] Atencio wishes to give the press interviews in Bernalillo County, as soon as

possible, to publicly disclose the facts and circumstances of CYFD's misconduct.[10] Such disclosure

---

[1] *See* the Declaration of Harold Atencio in Support of Plaintiff's Motion for Preliminary Injunction ("Atencio
Decl."), filed contemporaneously with this Motion, at ¶ 1.
[2] Atencio Decl. ¶ 2.
[3] Atencio Decl. ¶ 3.
[4] Atencio Decl. ¶ 4.
[5] Atencio Decl. ¶ 12.
[6] *Id*.
[7] Atencio Decl. ¶ 15.
[8] Atencio Decl. ¶ 17.
[9] *Id*.
[10] Atencio Decl. ¶ 19.

would not include identifying information of the infant or any party to the abuse and neglect case other than CYFD.[11] However, due to the threat of prosecution and disciplinary action by the state bar if he is charged with a criminal offense, Atencio believes that he cannot publicly disclose CYFD's bad acts and misguided decision making.[12] And, as Atencio regularly possesses such confidential information, he anticipates a future desire to comment publicly on CYFD's misconduct and bad acts.[13]

### C. New Mexico refuses to do away with its unconstitutional law.

In August of 2022, the Tenth Circuit released its decision in *Peck*. In January of 2023, the First Session of the 56th New Mexico Legislature convened.[14] During that legislative session, it attempted to pass House Bill 10[15], which would have allowed a party to comment on non-identifying information in abuse and neglect cases.[16] House Bill 10 was described by CYFD's Director of Protective Services Division as "consistent with recent federal case law issued in the 10th Circuit" and, if enacted, would make "the entire system… more transparent, and increase[] the accountability placed on … CYFD and Protective Services, as well as those individuals that have done harm."[17] The then-CYFD Secretary also stated that she supported House Bill 10, "as a replacement of our existing overly restrictive confidentiality statute that is currently in the law."[18] Despite the support garnered for House Bill 10, it failed to pass and become law. Since the failure of HB 10, the then-CYFD Secretary announced her resignation, and the Governor of New Mexico declined to call a special session to address CYFD's dysfunction.[19]

---

[11] *Id.*
[12] Atencio Decl. ¶ 22-24.
[13] Atencio Decl. ¶ 20.
[14] New Mexico Legislature, Home, available at https://www.nmlegis.gov/ (last accessed June 11, 2023).
[15] *See* Exhibit 1 to the Declaration of Benjamin Gubernick in Support of Plaintiff's Motion for Preliminary Injunction ("Gubernick Decl."), filed contemporaneously with this Motion.
[16] Gubernick Decl. Ex. 2.
[17] Gubernick Decl. Ex. 3.
[18] Gubernick Decl. Ex. 3.
[19] Gubernick Decl. Ex. 4.

### III.    LEGAL STANDARD

On a motion for a preliminary injunction, the movant must show:

(1) a likelihood of success on the merits; (2) a likelihood that the moving party will suffer irreparable harm if the injunction is not granted; (3) the balance of equities is in the moving party's favor; and (4) the preliminary injunction is in the public interest.

*Republican Party of New Mexico v. King*, 741 F.3d 1089, 1092 (10th Cir. 2013). In a First Amendment case, "the likelihood of success on the merits will often be the determinative factor because of the seminal importance of the interests at stake." *Verlo v. Martinez*, 820 F.3d 1113, 1126 (10th Cir. 2016) (quotation marks omitted) citing *Hobby Lobby Stores, Inc. v. Sebelius,* 723 F.3d 1114, 1145 (10th Cir. 2013).  This is because:

• the loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury,

• when [a] law ... is likely unconstitutional, the[ ] interests [of those the government represents, such as voters] do not outweigh [a plaintiff's interest] in having [its] constitutional rights protected, and

• it is always in the public interest to prevent the violation of a party's constitutional rights[.]

*Sebelius*, 723 F.3d at 1145 (10th Cir. 2013), *aff'd sub nom. Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, (2014) (citations and quotation marks omitted).

Additionally, "Tenth Circuit decisions have linked the 'irreparable injury' inquiry to the 'likelihood of success' inquiry, holding that a plaintiff who cannot demonstrate a substantial likelihood of success is not entitled to a presumption of irreparable harm." *Legacy Church, Inc. v. Kunkel*, 472 F. Supp. 3d 926, 1006 (D.N.M. 2020), *aff'd sub nom. Legacy Church, Inc. v. Collins*, 853 F. App'x 316 (10th Cir. 2021)  A plaintiff suffers irreparable harm "when the court would be unable to grant an effective remedy after a full trial because such damages would be inadequate and difficult to ascertain. *Dominion Video Satellite, Inc. v. EchoStar Satellite Corp*., 269 F.3d 1149, 1156 (10th Cir. 2001) (citation and quotation marks omitted).

To establish that the balance of equities tips in the movant's favor, the movant must show that the "threatened injury outweighs any injury to [non-movants] caused by granting the injunction." *Kunkel*, 472 F. Supp. 3d at 1062. And, finally, regarding whether the preliminary injunction is in the public interest, the court "must consider whether the movant has demonstrated a likelihood of success on the merits. Where a movant has demonstrated that the non-movant has violated the law, or constitutional rights, the public interest weighs in favor of granting an injunction. *Id.* at 1064 (citations omitted).

## IV.    ARGUMENT

### A.  Atencio has Article III standing.

To establish Article III standing, a plaintiff must show: "(1) an injury in fact that is both concrete and particularized as well as actual or imminent; (2) a causal relationship between the injury and the challenged conduct; and (3) a likelihood that the injury would be redressed by a favorable decision." *Protocols, LLC v. Leavitt*, 549 F.3d 1294, 1298 (10th Cir. 2008) (internal quotation marks omitted).

The injury-in fact requirement is "an invasion of a legally protected interest" that is "concrete and particularized," and "'actual or imminent, not conjectural or hypothetical.'" *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (citations and quotation marks omitted). Second, the causal relationship requirement is met where the injury is "fairly … traceable to the defendant's challenged conduct[.]" *Voter Reference Found., LLC v. Balderas*, 616 F. Supp. 3d 1132, 1245 (D.N.M. 2022) (citing *Lujan*, 504 U.S. at 560). Third and finally, "it must be 'likely,' and not 'speculative,' that a favorable decision will redress the injury." *Id*. (citing *Lujan*, 504 U.S. at 561).

In the present matter, Defendant is a New Mexico public official with authority to enforce the Criminal Provision of the Confidentiality Statute. Injunctive relief would remedy Atencio's harm by allowing him to exercise his First Amendment right to free speech. Thus, the only element

of Article III standing which could be meaningfully questioned is whether Atencio has suffered an injury in fact, as he has yet to speak or face prosecution. In the First Amendment context:

> two types of injuries may confer Article III standing to seek prospective relief. First, a plaintiff generally has standing if he or she alleges an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by statute, and there exists a credible threat of prosecution thereunder. Plaintiffs may have standing even if they have never been prosecuted or actively threatened with prosecution. Second, although allegations of a "subjective" chill are not adequate, a First Amendment plaintiff who faces a credible threat of future prosecution suffers from an "ongoing injury resulting from the statute's *chilling effect* on his desire to exercise his First Amendment rights.

*Ward v. Utah*, 321 F.3d 1263, 1267 (10th Cir. 2003) (citations and quotation marks omitted).

Here, Atencio's injury is that his speech is chilled by the Criminal Provision. On a chilled speech claim, courts determine whether plaintiffs have suffered a "concrete and particularized" injury by considering:

> (1) evidence that in the past they have engaged in the type of speech affected by the challenged government action; (2) affidavits or testimony stating a present desire, though no specific plans, to engage in such speech; and (3) a plausible claim that they presently have no intention to do so *because of* a credible threat that the statute will be enforced.

*Initiative & Referendum Inst. v. Walker*, 450 F.3d 1082, 1089 (10th Cir. 2006).

The Tenth Circuit applied the *Walker* test in determining that the *Peck* plaintiff adequately alleged a chilling effect that established an injury in fact. *Peck*, 43 F.4th at 1129-30. In *Peck*, the plaintiff, an attorney who represented parents and family members in child abuse cases, challenged the constitutionality of a Colorado statute that imposed criminal penalties for disclosure of any information in child abuse or neglect cases. *Id.* at 1123. The plaintiff claimed an Article III injury because she was "chilled from criticizing official conduct based on information contained in child abuse records and reports as a result of the criminal prohibitions [] and the State's commitment to enforcing them." *Id.* at 1129. The Tenth Circuit held that the plaintiff in *Peck* met the *Walker* test and established Article III standing. *Id.* at 1133. The plaintiff in *Peck* was found to have previously engaged in the type of speech affected by the challenged government action, that she adequately

stated a present desire to engaged in the restricted speech, and established a credible threat that the statute would be enforced against her. *Id*. at 1130-33.

Though his circumstances are slightly different from the plaintiff in *Peck*, Atencio also meets the *Walker* test to establish Article III standing.

**1**. **Atencio has the right to speak for the first time.**

Pre-enforcement challenges to unconstitutional statutes are a critical tool to protect First Amendment Rights. As recently explained by the Tenth Circuit, a plaintiff "might satisfy the relatively relaxed standard for an injury-in-fact on a chilled speech claim without meeting all the *Walker* factors." *Rio Grande Found. v. Oliver*, 57 F.4th 1147, 1161 (10th Cir. 2023). Specifically, "the first *Walker* factor—evidence of past relevant speech—is not essential because people have a right to speak for the first time." *Id*. (citation omitted). Evidence of past relevant speech is not "an indispensable element of standing." *Id*. (citation omitted).

Indeed, the importance of First Amendment rights "justif[ies] a lessening of prudential limitations on standing." *Ward v. Utah*, 321 F.3d 1263, 1266-67 (quoting *Sec'y of State of Md. V. Joseph H. Munson Co*., 467 U.S. 947, 956 (1984)). Thus, "[t]he mere threat of prosecution under [an] unlawful statute may have a 'chilling' effect on an individual's protected activity" sufficient to invoke "society's interest in having the statute challenged." *Id*.

Atencio has the right to speak for the first time, and his lack of past relevant speech does not negate his claim of injury-in-fact. For years, Atencio has been counseled by state district court judges against speaking in violation of the Confidentiality Statute.[20] Atencio has carefully adhered to that warning due to the threat of prosecution and related disciplinary consequences that affect his right to practice law in New Mexico.[21] The Criminal Provision of the Confidentiality Statute has forced Atencio to self-censor in the past and continues to chill his speech.[22]

---

[20] Atencio Decl. ¶ 15.
[21] Atencio Decl. ¶ 16.
[22] Atencio Decl. ¶¶ 16, 22-23.

**2. Atencio presently desires to speak publicly about CYFD misconduct.**

Atencio recently represented a family member of an infant who was subject to an abuse and neglect proceeding.[23] During the representation of his client, Atencio lawfully came into possession of information and records pursuant to the Confidentiality Statute, that established misconduct by CYFD employees or agents, possible CYFD employee corruption, and CYFD employee violation of policies and procedures.[24] Atencio wishes to disclose this lawfully obtained information that falls within the Confidentiality Statute's reach to an investigative reporter in Bernalillo County but the Criminal Provision of the Confidentiality Statute prohibits him from doing so.[25]

In *Peck*, the plaintiff had previously engaged in the speech that violated the Colorado confidentiality statute at issue and that fact was uncontested by the defendants. *Peck*, 43 F.4th at 1130. The *Peck* plaintiff had also submitted a sworn declaration that she wished to use non-identifying statements in "calling out public officials and public employees when they have issued materially false or improper reports concerning [her] clients" and that "she has in the past and desire[s] in the future to make public statements, including through the press[.]" *Id*. at 1131. The Court determined that her declaration and her apparent prior violation of the statute satisfied the "present desire" prong. *Id*.

Unlike the plaintiff in *Peck*, who generally intended to engage in future speech, Atencio has a present and immediate desire to disclose certain information regarding CYFD employee misconduct and possible corruption to an investigative reporter in Bernalillo County. Although it "makes no sense to require plaintiffs simultaneously to say this statute presently chills me from engaging in XYZ speech," and "I have specific plans to engage in XYZ speech next Tuesday[,]" Atencio intends to engage in such speech upon the invalidation of the Criminal Provision. *Walker*, 450 F.3d at 1089. Nevertheless, Atencio also anticipates that he will come into lawful possession

---

[23] Atencio Decl. ¶ 17.
[24] *Id*.
[25] Atencio Decl. ¶¶ 19, 22-23.

of confidential records in the future, and that he desires to make future statements to the press and media regarding CYFD misconduct that he learns of through those records.[26]

    Atencio has established his "present desire" to engage in prohibited speech. Atencio's desire to speak out is not speculative or hypothetical; but for the Criminal Provision, Atencio would have spoken out about CYFD malfeasance already.

    **3. A credible threat exists that the Criminal Provision will be enforced.**

    The final *Walker* factor "asks whether the alleged chill arise[s] from an objectively justified fear of real consequences." *Oliver*, 57 F.4th at 1164. There are "at least three factors to be used in determining a credible fear of prosecution: (1) whether the plaintiff showed 'past enforcement against the same conduct'; (2) whether authority to initiate charges was 'not limited to a prosecutor or an agency' and, instead, 'any person' could file a complaint against the plaintiffs; and (3) whether the state disavowed future enforcement." *Peck*, 43 F.4th at 1132.

    Regarding the first factor, Plaintiff is not presently aware of past prosecutions for violations of the Confidentiality Statute. However, "[t]he fact that a prosecutor ha[s] never enforced the statute at issue is not dispositive." *Scott v. Hiller*, No. 21-CV-02011-NYW-KLM, 2022 WL 4726038, at *6 (D. Colo. Oct. 3, 2022). Indeed, "[a]s to whether a First Amendment plaintiff faces a credible threat of prosecution, the evidentiary bar that must be met is extremely low.... The Supreme Court has often found standing to challenge criminal statutes on First Amendment grounds even when those statutes have never been enforced." *Mangual v. Rotger-Sabat*, 317 F.3d 45, 57 (1st Cir. 2003) (cited by *Peck*, 43 F.4th at 1133). Relatedly, the authority to initiate charges is limited to law enforcement agents in New Mexico.

    In *Peck*, the Court gave "heavy weight" to the fact that Colorado refused to disavow the statute at issue because nothing would prevent charges against the plaintiff for future statements made in violation of the statute. *Peck*, 43 F.4th at 1133. That, the Court said, made the plaintiff's "fear of consequences for disclosures of information in violation of [the statute] objectively

---

[26] Atencio Decl. ¶ 20.

justifiable." *Id. See also, Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 302 (1979) (injury in fact where the state "has not disavowed any intention of invoking the criminal penalty provision" in a statute that criminalized speech); *Virginia v. American Booksellers Ass'n, Inc*., 484 U.S. 383, 392-93 (1988) (plaintiffs had standing to challenge a criminal statute limiting speech because "[t]he State has not suggested that the newly enacted law will not be enforced against them.").

Defendant has not disavowed the Criminal Provision of the Confidentiality Statute. The Legislature's refusal to bring the Confidentiality Statute into compliance with Tenth Circuit precedent underscores that the Criminal Provision will continue to be enforced in its present form. Atencio has been warned numerous times by state district court judges that revealing information deemed confidential by the Confidentiality Statute is a crime.[27] As a result, Atencio continues to self-censor his speech in fear of a credible threat of prosecution.[28] Viewed together, Atencio has established a credible fear of prosecution.

Atencio's claim of a chilling effect on his speech is concrete and specific enough to satisfy the injury-in-fact requirement. Atencio has suffered a concrete and particularized injury because he has suffered, and continues to suffer, from the chilling effect of the Criminal Provision. He therefore has standing to proceed.

**B.  The Court Should Enter a Preliminary Injunction**

**1.  Atencio is likely to succeed on the merit because the Criminal Provision violates the First Amendment.**

**i.      The Criminal Provision is subject to strict scrutiny because it is a content-based regulation of speech.**

The First Amendment of the United States Constitution, via the Fourteenth Amendment, prohibits the enactment of state laws "abridging the freedom of speech." U.S. Const., Amdt. 1; *Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155, 163 (2015). A state "has no power to restrict

---

[27] Atencio Decl. ¶ 15.
[28] Atencio Decl. ¶¶ 16, 23.

expression because of its message, its ideas, its subject matter, or its content." *Id.* citing to *Police Dept. of Chicago v. Mosley,* 408 U.S. 92, 95 (1972). Content-based laws, which "target speech based on its communicative content—are presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests." *Id.*; *Peck*, 43 F.4th at 1134. (citations omitted).

In *Peck*, the Tenth Circuit analyzed the constitutionality of Section 19-1-307(4) ("Section 307") of the Colorado Children's Code Records and Information Act, which criminalized the disclosure of both identifying and nonidentifying information in child abuse and neglect records and reports.[29] *Peck*, 43 F.4th at 1125. Section 307(4) read that "[a]ny person who improperly releases or who willfully permits or encourages the release of data or information contained in the records and reports of child abuse or neglect to persons not entitled to access" committed "a class 1 misdemeanor[.]" *Id.* at 1122. The Court determined that Section 307(4) was subject to strict scrutiny because it was a "content-based restriction on speech [] that [] targets and prohibits speech based on its content, that content being information from child abuse reports. As such, it is subject to strict scrutiny." *Id.* 1134–35.

Here too, the Criminal Provision is a content-based restriction on speech—it prohibits and criminalizes the release of "any information or records closed to the public pursuant to the Abuse and Neglect Act or release or makes other unlawful use of records[.]" Like the statute at issue in *Peck*, the Criminal provision targets and prohibits speech based on any information derived from abuse and neglect cases, without any deference to whether the information is identifying or nonidentifying. *See also Reed*, 576 U.S. at 155 ("Speech regulation is content based if a law applies to particular speech because of the topic discussed or the idea or message expressed."). Accordingly, the Criminal Provision is subject to strict scrutiny.

---

[29] *Peck* also analyzed the constitutionality of Colorado Children's Code Records and Information Act Section 307(1), which criminalized the disclosure of identifying information only. *Peck*, 43 F.4th at 1125. The Tenth Circuit held that the plaintiff lacked standing to challenge Section 307(1) because the plaintiff did not seek to disclose identifying information, and thus, did not allege a valid injury. *Id.*

> **ii.**     **The Criminal Provision is not narrowly tailored to serve a compelling state interest.**

Where laws are "content-based restrictions on speech, those provisions can stand only if they survive strict scrutiny, which requires the Government to prove that the restriction furthers a compelling interest and is narrowly tailored to achieve that interest[.]" *Reed*, 576 U.S. at 171. (citation omitted). "The heavy burden of demonstrating that a content-based restriction is the least restrictive means among available, effective alternatives lies with the government." *Peck*, 43 F.4th at 1135 (citing *Ashcroft v. Am. C.L. Union*, 542 U.S. 656, 665–66 (2004) (quotation marks omitted)).

Atencio acknowledges New Mexico's compelling interest in protecting identifying information of children, family members, and informants in child abuse and neglect cases. *Pennsylvania v. Ritchie*, 480 U.S. 39, 60 (1987) (stating that the state had a "compelling interest in protecting its child-abuse information."). But the Criminal Provision is not narrowly tailored to protect that interest—on its face, the Criminal Provision prohibits the dissemination of *any* information and prohibits the release or unlawful use of records, with no exception. In New Mexico, a narrowed prohibition on dissemination of *identifying* information of children, parents and guardians, and informants in child abuse and neglect cases would be a less restrictive means available to serve the State's compelling interest.

The proposition for a narrowly tailored statute prohibiting the dissemination of identifying information is supported by *Peck*. The Tenth Circuit interpreted the Colorado confidentiality statute at issue to criminally punish disclosures of "any information" including nonidentifying information in child abuse cases. 43 F.4th at 1128. The Tenth Circuit stated that a narrower version of the statute "prohibiting and punishing only disclosures of identifying information from child abuse reports, would adequately serve Colorado's compelling interest" and that "[b]ecause there is a feasible and less restrictive alternative, [the statute] is not narrowly tailored to the state's compelling interest, so is facially unconstitutional and void." *Id.* at 1137.

Speech that publicizes information relating to government misconduct "has traditionally been recognized as lying at the core of the First Amendment." *Butterworth v. Smith*, 494 U.S. 624, 632 (1990). But the far-reaching scope of the Criminal Provision allows child abuse and neglect information and reports to be cloaked in total secrecy from the public even when nonidentifying information which the state *does not* have a legitimate interest in protecting is at issue. In fact, at its core, the Criminal Provision mandates a total ban on an individual's right to divulge information he or she lawfully obtained related to government misconduct. This total ban on speech is not narrowly tailored and unlawfully abridges Atencio's First Amendment rights.

Additionally, the Child Abuse Prevention and Treatment Act (CAPTA) provides guidance and funding to States to improve, in relevant part, child abuse and neglect case intake, assessment, screening and investigation.[30] To the extent that it is relevant here, CAPTA requires "methods to preserve the confidentiality of all records in order to protect the rights of the child and of the child's parents or guardians" be in place when a state accepts grant funding. 42 U.S.C. 5106a(b)(2)(B)(viii). It does not mandate a criminal penalty for dissemination of information related to child abuse cases or require that a state enact such a criminal penalty. CAPTA, also, does not require a blanket prohibition on disclosure of all information in child abuse cases, but rather requires that the rights of the child and child's parents or guardians be protected. Thus, CAPTA does not require enforcement of a criminal penalty for the State to continue receiving funding grants, or to protect confidentiality in abuse and neglect cases. *Cf. Smith v. Daily Mail Pub. Co.*, 443 U.S. 97, 105 (1979) (stating that "there is no evidence to demonstrate that the imposition of criminal penalties is necessary to protect the confidentiality of juvenile proceedings."); *Peck*, 43 F.4th at 1137 ("it appears to us that Colorado qualified for CAPTA funding before Section 307(4) was enacted in its current form in 2003.").

---

[30] U.S. Department of Health & Human Services, Child Abuse Prevention and Treatment Act (CAPTA) State Grants, available at https://www.acf.hhs.gov/cb/grant-funding/child-abuse-prevention-and-treatment-act-capta-state-grants (last accessed May 31, 2022).

Indeed, "[t]he First Amendment requires that the Government's chosen restriction on the speech at issue be actually necessary to achieve its interest." *United States v. Alvarez*, 567 U.S. 709, 725 (2012). Instead of a blanket prohibition on dissemination of child abuse and neglect information, a narrowly tailored statute protecting identifying information of children, guardians, and informants would protect New Mexico's compelling interest in child abuse and neglect cases. The Court in *Peck* agreed that although "separating identifying information from non-identifying information would often be a difficult task…[t]he touchstone is whether the state has shown that no alternative exists that is both less restrictive than the existing law and would effectively achieve the state's compelling interest." 43 F.4th at 1135 (quotation marks omitted).

## 2. Atencio has and will continue to suffer irreparable harm if the injunction is not granted.

It is well settled that "the loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373–74 (1976). And, "when an alleged constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary." *Awad v. Ziriax*, 670 F.3d 1111, 1131 (10th Cir.2012). When a plaintiff's First Amendment right is abridged, irreparable harm is presumed. *See e.g. Utah Licensed Beverage Ass'n v. Leavitt*, 256 F.3d 1061, 1076 (10th Cir. 2001) (agreeing that "it is proper for us to assume irreparable injury due to the deprivation of [the plaintiff's] commercial speech rights.").

Atencio currently desires to speak to an investigative reporter about CYFD malfeasance he learned of from confidential reports and information. He has been unable to do so, as the Criminal Provision threatens him with criminal prosecution and he risks disciplinary action by the New Mexico Disciplinary Board if he does so. Furthermore, based on Atencio's experience and work in adoption law, he expects to come across materials that he would wish to publicly discuss, but fears violating the Confidentiality Statute in the future.  Thus, Atencio's abridgment of his First Amendment right constitutes irreparable harm.

### 3.   The balance of equities.

The Criminal Provision is an unconstitutional statute. Atencio's declaration shows that the Criminal Provision has restricted his protected speech in the past and will continue to restrict his protected speech in the future. Defendant, by contrast, has no equitable interest in enforcing an unconstitutional criminal statute. *See, e.g.*, *Am. C.L. Union v. Johnson*, 194 F.3d 1149, 1163 (10th Cir. 1999) (stating that "the threatened injury to Plaintiffs' constitutionally protected speech outweighs whatever damage the preliminary injunction may cause Defendants' inability to enforce what appears to be an unconstitutional statute."). Because the injury to Atencio's constitutional right to free speech outweighs any injury to Defendant caused by granting the injunction, the balance of equities tips in Atencio's favor.

### 4.   Public interest.

A preliminary injunction enjoining Defendant from prosecuting an unconstitutional statute that abridges Atencio's First Amendment rights is consistent with the public interest. Certainly, "it is always in the public interest to prevent the violation of a party's constitutional rights." *Verlo v. Martinez*, 820 F.3d 1113, 1127–28 (10th Cir. 2016) (internal citation and quotation marks omitted); *Pac. Frontier v. Pleasant Grove City,* 414 F.3d 1221, 1237 (10th Cir.2005) ("Vindicating First Amendment freedoms is clearly in the public interest."); *Am. C.L. Union v. Johnson*, 194 F.3d 1149, 1163 (10th Cir. 1999) (agreeing that a "preliminary injunction will not be adverse to the public interest as it will protect [] free expression[.]") (citation and quotation marks omitted). As Atencio has demonstrated he is likely to establish violation of his constitutional rights when the Court rules on the merits, an injunction would be in the public interest.

## V.   CONCLUSION

For the reasons stated above, Plaintiff has established Article III standing. He has established that he is likely to succeed on the merits, that he has and will suffer irreparable harm if the injunction is not granted, that the balance of equities tips in his favor, and that the preliminary injunction is in the public interest. Plaintiff respectfully requests that this Court grant his motion

for a preliminary injunction and prohibit Defendant from prosecuting him and all others similarly situated when engaging in constitutionally protected speech.

Respectfully submitted,

**GUBERNICK LAW P.L.L.C.**

Date: June 12, 2023
By:_____
Benjamin Gubernick (SBN 145006)
ben@gubernicklaw.com
Sri Mullis (SBN 141551)
sri@gubernicklaw.com
10720 W. Indian School Rd.,
Suite 19, PMB 12
Phoenix, AZ 85037
623-252-6961
ben@gubernicklaw.com

## CERTIFICATE OF SERVICE

It is hereby certified that a true and correct copy of the foregoing motion and supporting declarations were served via the CM/ECF system on June 12, 2023, to all attorneys of record in this matter, and to the following via email:

Taylor S. Rahn
Robles, Rael & Anaya, P.C.
Email: taylor@roblesrael.com

By: /s/ Benjamin Gubernick
Benjamin Gubernick